**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Juan Duran GUZMAN, (00–6195),**
**and Nelson Millett, (00–6197),**
**Defendants–Appellees.**

**Nos. 00–6195, 00–6197.**

United States Court of Appeals,
Sixth Circuit.

Oct. 2, 2002.

Before SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

The United States appeals the order of the district court refusing to make a sentencing determination–ordered by this Court in a prior appeal of this case–regarding whether Defendants–Appellees Juan Duran Guzman and Nelson Millett ("the Defendants") were in the drug distribution chain that led to a death. The United States argues that the district court erred because it was bound to follow the mandate issued in that prior appeal and because the district court could have enhanced the Defendants' sentences without violating either the Defendants' plea agreements or *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We agree with the United States, and accordingly we reverse the judgment of the district court and remand for further proceedings.

### Factual and Procedural Background

Beginning in 1994, members of the Isaacs family bought heroin in Philadelphia on a weekly basis, driving it back to their residence in Mountain City, Tennessee. The Defendants, who resided in Philadelphia, were one of the Isaacs' sources, supplying them with heroin from approximately June through December of 1996. In mid-September of 1996, a young Tennessean named Kristopher Phillips bought heroin from Johnny Isaacs; several hours later Phillips lay dead of an overdose. Next to Phillips's body were several plastic bags—apparently the bags that had held Phillips's heroin—labeled "Wu Tang."

In January of 1997 both Defendants pleaded guilty to possessing heroin with intent to distribute, in violation of 21 U.S.C. § 846. Each entered into a written plea agreement providing that the court could impose any lawful term of imprisonment, and specifying that the maximum penalty was a term of imprisonment not less than five nor more than forty years. At the plea hearing colloquy the government orally advised the Defendants that someone had died in the course of the conspiracy and that their sentences would be enhanced to 20 years to life if they were held responsible for that death, but the Defendants' written plea agreements did not mention this possibility.

The district court sentenced both defendants to the Sentencing Guidelines minimum of sixty months, finding that they were not responsible for Phillips's death because they were not the "proximate cause" of the death. The government appealed, and we held that the district court's "proximate cause" standard was erroneous and the court should have applied the "reasonable foreseeability" standard found in U.S.S.G. § 1B1.3(a)(1)(B). *See United States v. Swiney,* 203 F.3d 397 (6th Cir.2000). We reversed the district court's ruling, vacated the Defendants' sentences, and remanded the case for resentencing with these instructions:

> On remand, the district court is directed to determine whether Johnny Isaacs' distribution of heroin was "reasonably foreseeable" as defined in U.S.S.G. § 1B1.3(a)(1)(B) and commentary to any of these Defendants. In other words, before any of the Defendants can be subject to the sentence enhancement of 21 U.S.C. § 841(b)(1)(C) and U.S.S.G. § 2D1.1(a), the district court must find that he or she is part of the distribution chain that lead [sic] to Phillips' death.

*Id.* at 406.

At the evidentiary hearing held on remand, it became evident that the Defendants had sold heroin labeled "Wu–Tang." The Defendants attempted to show that they were not in Phillips's distribution chain by presenting testimony indicating that they were not necessarily the only people who sold "Wu–Tang" heroin in Philadelphia, and that the Isaacs bought heroin in Philadelphia from sellers other than the Defendants. The government countered this with the testimony of a Drug Task Force Agent that the Defendants had in fact been the Isaacs' sole source.

Nevertheless, for two reasons that it raised *sua sponte,* the court in the end refused to resolve the factual question of whether the Defendants were in the distribution chain. First, the court held that to impose the enhanced sentence would violate the Defendants' plea agreements: the written agreements recited the applicable penalty range as 5 to 40 years, but the government's proposed enhancement would require sentences of 20 years to life–thus creating a possible sentence of over forty years; also, to allow the enhancement would violate contractual principles because the possibility of the enhancement had not been written into the agreement and the court deemed it improper to consider the government's oral warnings. Second, the court opined that in light of *Apprendi* –handed down after we first remanded this case–the question of "whether or not [the Defendants were] in the chain of distribution may now require proof beyond a reasonable doubt."

## I. Whether the District Court Violated the Mandate

The government argues that the district court, in refusing to make a factual finding, violated the "mandate rule," under which "a district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir.1999). We review a district court's interpretation of a mandate *de novo. United States v. Moore,* 131 F.3d 595, 598 (6th Cir.1997).

In *Campbell* we explained that "[t]raditionally, the mandate rule instructs that the district court is without authority to expand its inquiry beyond the matters forming the basis of the appellate court's remand." 168 F.3d at 265. Still, remands can be either general or limited: "Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. General remands, in contrast, give district

courts authority to address all matters as long as remaining consistent with the remand." *Id.* (citing *Moore*, 131 F.3d at 597–98). Though it is not always easy to distinguish the two types of remand, district courts can follow certain guidelines, including whether specific language in the remand clearly limits the scope of subsequent proceedings, whether the appellate court explicitly articulated the reasons for its remand, whether the appellate court articulated the prescribed chain of events with particularity, and whether multiple issues are involved (which, if present, suggest a general mandate). *Id.* at 266–28. Overall, "[i]n the absence of an explicit limitation, the remand order is presumptively a general one," *id.* at 268 (quoting *Moore*, 131 F.3d at 598), and "[t]he language used to limit the remand should be, in effect, unmistakable." *Id.*

In the present case it is evident that our remand was limited rather than general: we had considered only one issue (namely, whether the district court had erred in how it interpreted the enhancement provisions of 21 U.S.C. § 841(b)(1)(C) and U.S.S.G. § 2D1.1(a)(2)); we explicitly explained our reasons for the remand (because the district court had applied the wrong rule); and we articulated with particularity the chain of events the district court should follow ("[o]n remand, the district court is directed to determine whether Johnny Isaacs' distribution of heroin was 'reasonably foreseeable' as defined in U.S.S.G. § 1B1.3(a)(1)(B) and commentary to any of these Defendants."). Hence, if the mandate rule controls, the district court acted beyond its mandate.

This case presents unusual problems, however, since the district court's departure did not regard sentencing matters not mentioned in the remand (as was the case in *Campbell* and *Moore*), but rather regarded potential problems that struck at the fundamental fairness and constitutionality of applying the enhancement—whether the enhancement would violate the plea agreements or would run afoul of a newly decided Supreme Court case. We conclude that if the district court was right on either of these issues, then it permissibly refused to follow the mandate, and if it was wrong on both then it did so impermissibly. (It strikes us, however, that even if the court was right, it still should have made the factual determination on reasonable foreseeability: if the court found that the Defendants were not part of the distribution chain that led to Phillips's death, then this appeal might have been unnecessary, and if it found that they were then it would at least have simplified matters by settling the factual question and leaving us only with legal ones.)

## II. Whether the Enhancement Would Violate the Plea Agreements

The district court relied on *United States v. Wells*, 211 F.3d 988 (6th Cir.2000) for its conclusion that the enhancement would violate the Defendants' plea agreements. *Wells* vacated a district court's decision to deny a downward departure because the defendant had failed to comply with a promise that was not written into his plea agreement that, like the one before us here, contained an integration clause. We find, for reasons unrelated to *Wells*, that the district court erred.

First, the enhancement would not necessarily have violated the plea agreements. Those agreements provided that "[t]he defendant's sentencing will be governed by the Federal Sentencing Guidelines[.]" Given that U.S.S.G. § 2D1.1(a)(2) provides for an enhanced sentence if the "conviction establishes that death or serious bodily injury resulted from the use of the substance," the Defendants had reason to be prepared for an enhancement, and by applying the Guidelines' enhancement, the

district court could hardly be said to be violating the agreement.

Second, it would impose an unreasonable burden on the government to require it either to include every possible enhancement in the plea agreement or risk a finding that the enhancement violated the agreement. Here the agreement provided broadly for a sentence of between 5 and 40 years, even though the un-enhanced sentence had a maximum of 20 years, and the government acted properly by seeking a sentence within the agreement's bounds.

■ Finally, even if the government's oral statements at the plea hearing are disregarded, an enhanced sentence would not necessarily violate the written plea agreement unless it were established that the "violation" consisted in the bare possibility that the Defendants could receive a sentence greater than that outlined in the agreement, regardless of whether they actually received such a sentence. (This seems to have been the district court's concept of "violation.") Given that in the written agreement the Defendants acknowledged that they could be exposed to a sentence of 60 to 480 months, an enhanced sentence of over 480 months would be contrary to the maximum sentences specified in the written agreements, but an enhanced sentence of 240 to 480 months would not. Moreover, the Sentencing Guidelines prescribe for the Defendants an enhanced sentence of 210 to 262 months–well below the 480–month mark that would violate the agreement. Unless one adopts a formal as opposed to a substantive notion of what would "violate" the plea agreement, the enhanced sentence would have been permissible and the district court clearly erred in saying that it would not.

### III. Whether the Enhancement Would Violate *Apprendi*

In *Apprendi* the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In the present case the Defendants each pleaded guilty to violating 21 U.S.C. § 846, but neither admitted responsibility for Phillips's death, and consequently each was exposed to a penalty of anywhere between 0 and 240 months under 21 U.S.C. § 841(b)(1)(C). If the district court had found the Defendants liable for Phillips's death, the statutory "if death results" enhancement established in § 841(b)(1)(C) would have raised the minimum sentence to 240 months, but the actual sentence the Defendants would have been exposed to under the Guidelines would have been between 210 and 262 months. Consequently, though a sentence of over 240 months would have violated *Apprendi*, the district court at the time it rendered its decision could have both applied the enhancement and avoided violating *Apprendi* simply by imposing a sentence of between 210 and 240 months.

After the district court rendered its decision, the Sixth Circuit handed down a series of cases that brought within the reach of *Apprendi* any fact that increased the *minimum* statutory penalty. *See United States v. Ramirez*, 242 F.3d 348, 351–52 (6th Cir.2001); *United States v. Flowal*, 234 F.3d 932, 936–37 (6th Cir. 2000). But this line of cases was recently overruled in *Harris v. United States*, —— U.S. ——, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). *See, e.g., United States v. Chapman*, 305 F.3d 530, ——, 2002 U.S.App. LEXIS 20408, at *16 (6th Cir.2002) ("*Harris* makes it clear ... that *Ramirez, Flowal,* and their progeny have been overturned.").

■ We conclude that the district court could have imposed, and still may impose,

death-enhanced sentences on the Defendants without violating *Apprendi:* any sentence of 240 months or less would be permissible. We therefore hold that the district court's refusal to make a factual finding because an enhanced sentence might violate *Apprendi* was erroneous.

## Conclusion

For the foregoing reasons, we reverse the district court's order and remand with instructions to make the factual determination outlined in *Swiney,* and to resentence these Defendants accordingly.