NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0649n.06

No. 08-5972

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Oct 15, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA, )
                                       )
    Plaintiff-Appellee, )
                                        )
                                        ) ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR THE
                                        ) EASTERN DISTRICT OF TENNESSEE
PERRY D. McCREARY-REDD, )
                                        ) OPINION
    Defendant-Appellant. )
                                        )

**Before: GILMAN and WHITE, Circuit Judges; and WATSON, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Perry D. McCreary-Redd was arrested in 2004

after the local police found him in possession of crack cocaine and a handgun near a housing project

in a high-crime neighborhood in Knoxville, Tennessee. Pursuant to a written plea agreement,

McCreary-Redd pled guilty to possessing crack cocaine with the intent to distribute the drug and to

carrying a firearm during a drug-trafficking crime. This court set aside his conviction on appeal,

however, finding that the parties' stipulated facts were insufficient to support the guilty plea and that

the district court had failed to determine whether McCreary-Redd understood each element of the

offenses to which he pled guilty.

On remand, McCreary-Redd entered a plea of not guilty and decided to go to trial rather than

stipulate to further facts in support of his guilty plea. The government, before proceeding to trial,

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

filed a superseding indictment that added new charges. Following a jury trial, McCreary-Redd was convicted of conspiracy to possess cocaine base, possession of cocaine base, possession of a firearm by a felon, and criminal contempt. He was sentenced to 70 months' imprisonment.

McCreary-Redd now appeals his conviction, arguing that the district court erred in denying various pretrial motions that he had filed and in its rulings on two evidentiary issues. For the following reasons, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

The underlying facts giving rise to this case occurred in the early morning hours of February 14, 2004. At that time, Knoxville Police Department Officers Orlando Dixon, Doyle Lee, and Robert Taylor were conducting surveillance at a housing project in Knoxville, Tennessee. The Department had received several complaints regarding illegal drug activity in the area, specifically in Parking Lot F of the project.

At approximately 1:40 a.m., the officers observed a dark blue sedan driving with its headlights turned off. Officer Dixon recognized the sedan as having just left Parking Lot F. The driver, whom Officer Lee later identified as McCreary-Redd, returned to Parking Lot F a short time later and backed into a parking space. McCreary-Redd then went up to one of the housing units and came back down a few minutes later. Officer Lee witnessed a female approach McCreary-Redd at this time and say something to the effect of "hey, Redd, get me one, too."

As McCreary-Redd was returning to the sedan, the officers approached and Officer Lee asked to speak with him. Officer Lee informed McCreary-Redd that the latter had been driving with his

headlights turned off. After obtaining McCreary-Redd's driver's license, Officer Lee asked

McCreary-Redd whether he was in possession of any weapons or drugs. McCreary-Redd responded

that he was not. Officer Lee then asked if he could conduct a pat-down search on McCreary-Redd.

McCreary-Redd did not verbally answer this question; instead, he put his hands up and turned his

back to Officer Lee.

While searching McCreary-Redd, Officer Lee discovered a handgun in McCreary-Redd's

waistband and subsequently pushed him forward onto the hood of the sedan and removed the gun.

After removing the gun, Officer Lee arrested and handcuffed McCreary-Redd. Officer Lee then

continued the search and discovered a white plastic vial attached to McCreary-Redd's keychain

containing what appeared to be crack cocaine. At no point during or after the arrest did the officer

advise McCreary-Redd of his *Miranda* rights.

**B.      Procedural background**

###### *1.      Indictment and motion to suppress*

On February 18, 2004, a grand jury charged McCreary-Redd with (1) being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) possessing crack cocaine with the

intent to distribute the drug, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and (3) carrying a

firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

McCreary-Redd responded by filing a motion to suppress the gun and drugs seized from him as well

as any post-arrest statements that he made while Officer Lee continued to search him after

discovering the handgun. Although the magistrate judge recommended that McCreary-Redd's

motion be granted in full, the district court suppressed only the statements made following the arrest.

## 2. *Plea agreement and sentence*

In December 2004, McCreary-Redd pled guilty to counts two (possessing crack cocaine with the intent to distribute) and three (carrying a firearm during a drug-trafficking crime) pursuant to a written plea agreement. A two-page "Agreed Rule 11 Factual Basis," setting forth the facts that gave rise to McCreary-Redd's arrest, was filed in conjunction with the plea agreement.

The plea agreement itself contained a number of provisions that the district court described as being "fairly standard," several of which are relevant to this appeal. First, the parties included a provision stating that McCreary-Redd would "cooperate fully, truthfully, and completely with any and all law enforcement agents." The government in turn agreed not to use any self-incriminating information provided by McCreary-Redd to his detriment. But the parties further stipulated that

> nothing in this plea agreement shall be applied to restrict the use of information (1) known to the government prior to entering into this written plea agreement; (2) obtained from any other source; (3) in any prosecution for perjury or giving of false statements; (4) in the event that the Defendant withdraws from the plea agreement; (5) if there is a breach of the plea agreement by the Defendant; (6) if the Defendant violates any of the terms or conditions of the Court's order setting conditions of release (if applicable); or (7) concerning the Defendant's prior record.

In addition to these provisions, the plea agreement contained a partial waiver of appellate rights, which stated that

> [t]he Defendant further agrees not to file a direct appeal of his convictions or any motions or pleadings pursuant to 28 U.S.C. § 2255. However, he reserves the right to pursue a direct appeal of his sentence. Thus, the Defendant knowingly, intentionally, and voluntarily waives his right to collaterally attack the plea or sentence in the instant case. The Defendant understands that if the Defendant files any such motion, he will have breached the plea agreement and the United States will then have the following options: (1) move to dismiss the motion, (2) be relieved of any obligations under the plea agreement or (3) both. The parties agree that the

-4-

Defendant retains his right to raise claims of ineffective assistance of counsel or prosecutorial misconduct.

Finally, the plea agreement set forth the consequences if McCreary-Redd failed to comply with the above provisions. In relevant part, McCreary-Redd agreed that if he failed to abide by the agreement's terms, the government could prosecute him for any of the crimes listed in the indictment. He also conceded that any of the statements that he had made at any time during the case could then be used against him.

In exchange for McCreary-Redd's guilty plea, the government agreed not to pursue the charges set forth in count one (being a felon in possession of a firearm) of the indictment. The government further agreed that, at sentencing, it would "bring to the Court's attention the nature, extent and value of the Defendant's cooperation. This information will be provided to the Court so that it may be considered in determining a fair and appropriate sentence under the facts of the case."

Pursuant to the cooperation provisions of the plea agreement, McCreary-Redd spoke to FBI Special Agent David Bukowski and Knoxville Police Officer Ed Kingsbury in December 2004. McCreary-Redd's counsel accompanied him to the meeting, but no prosecutor was present. During the interview, McCreary-Redd stated that he had purchased crack cocaine from three individuals who went by the nicknames Bazzy, Buck, and Dee. According to McCreary-Redd, these three individuals operated out of an apartment belonging to a man named Johnny, who resided at the housing project where McCreary-Redd was arrested. McCreary-Redd provided physical descriptions for all four individuals.

In addition, McCreary-Redd described the extent of his drug-dealing activities to Agent Bukowski and Officer Kingsbury. He stated that he typically purchased three grams of crack cocaine at a time with the intention to resell the drugs, and that he engaged in drug dealing as many as six days a week for a four-month stretch in the 2003-2004 time frame. McCreary-Redd added that he had purchased a gun from a seller in the parking lot of a Knoxville gun show and carried it with him whenever he was buying or selling drugs.

The district court, in February 2005, sentenced McCreary-Redd to 123 months' imprisonment. Prior to being sentenced, however, McCreary-Redd escaped from a halfway house in Knoxville and fled to Michigan. Despite this action, the government stipulated that McCreary-Redd had accepted responsibility for his actions and did not object to him receiving a two-level reduction in his offense level under the U.S. Sentencing Guidelines.

### 3. *First appeal and remand*

McCreary-Redd, with the assistance of appointed counsel, appealed his sentence in March 2005. In June 2005, he filed a motion with this court to dismiss his counsel and proceed pro se. *United States v. McCreary-Redd* ("*McCreary-Redd I*"), 475 F.3d 718, 720 (6th Cir. 2007). This court initially denied the motion, but permitted McCreary-Redd to file a pro se supplemental brief. *Id*. Upon reconsideration, this court granted McCreary-Redd's motion to dismiss his counsel and permitted him to proceed pro se. *Id*. at 720-21.

On appeal, McCreary-Redd contended that his sentence was unreasonable, and that the district court had accepted his plea agreement in violation of Rule 11 of the Federal Rules of Criminal Procedure. *Id*. at 721. This court agreed with the latter argument, concluding that the

district court had failed to establish a factual basis to support McCreary-Redd's conviction for possession of crack cocaine with the intent to distribute the drug (count two), and had failed to determine whether he understood the nature of the charge. *Id.* at 725-26. Because the other crime to which McCreary-Redd had pled guilty—knowingly using and carrying a firearm during and in relation to a drug-trafficking crime (count three)—"encompassed count two as a predicate offense," this court vacated McCreary-Redd's plea as to both counts. *Id*. at 726-27. It further remanded the case "for pleading anew." *Id*. at 727.

On remand, McCreary-Redd appeared before the assigned magistrate judge in August 2007, but did not enter a guilty plea or file a notice of intent to plead guilty. He instead filed various pro se motions, including a motion to dismiss the pending indictment against him and a motion to enter a judgment of acquittal on all charges. The parties also engaged in plea negotiations. These negotiations failed, however, despite the government offering McCreary-Redd the opportunity to replead to the charges in the original indictment and further offering to recommend the same sentence that McCreary-Redd had received for his vacated conviction.

The magistrate judge held a hearing in September 2007 on the motions that McCreary-Redd had filed, at which time McCreary-Redd, by now having been appointed new counsel, withdrew his motions but again did not enter a guilty plea. On the day of the hearing, McCreary-Redd filed a motion to declare the plea agreement void, relying on this court's finding that the Agreed Rule 11 Factual Basis was insufficient to support a conviction for possession of crack cocaine with the intent to distribute. The government then filed a notice of McCreary-Redd's breach of the plea agreement, in which it asserted that McCreary-Redd's pro se supplemental brief that he had filed with this court

constituted an attack on his conviction in violation of the agreement. It further stated that this attack released the government from any of the obligations that it had incurred in exchange for McCreary-Redd's guilty plea.

Consistent with this notice, the government sought and obtained a superseding indictment, charging McCreary-Redd with the three counts from the original indictment (which became counts three, four, and five of the superseding indictment), as well as three new counts. Count one of the superseding indictment charged McCreary-Redd with conspiracy to possess and distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. He was charged in count two of the superseding indictment with brandishing a firearm during and in relation to the conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Finally, count six charged him with criminal contempt for fleeing the halfway house prior to being sentenced in 2005. The government also filed a motion to reinstate count one of the original indictment (which became count three of the superseding indictment), this being the count that the government had dismissed as part of the plea agreement.

Following a hearing on these motions, the magistrate judge recommended that McCreary-Redd's motion to declare the plea agreement void be granted in part, insofar as both the *McCreary-Redd I* court's remand and McCreary-Redd's subsequent plea of not guilty nullified the plea agreement. The magistrate judge also recommended granting the government's motion to reinstate count one of the original indictment (being a felon in possession of a firearm). McCreary-Redd responded with motions of his own, requesting that the district court (1) suppress the statements that he made to Agent Bukowski and Officer Kingsbury in the December 2004 interview, (2) dismiss the

superseding indictment on double jeopardy grounds, (3) permit him to refile his motion to suppress the gun and drugs in question, and (4) dismiss the superseding indictment for prosecutorial vindictiveness.

The district court denied all of McCreary-Redd's motions, and then proceeded to address both parties' objections to the magistrate judge's recommendation regarding the plea agreement. It agreed with the magistrate judge's finding that the plea agreement had been nullified, but held that it was McCreary-Redd's act of filing a direct appeal—rather than this court's opinion—that caused the nullification.

### 4. *Pretrial rulings and trial*

In preparation for trial, the government filed a notice of its intent to call various witnesses. One of these witnesses was Dave Lewis, an agent with the Drug Enforcement Administration (DEA). Agent Lewis was offered as an expert in drug investigations who would testify that the amount of crack cocaine found on McCreary-Redd was an amount consistent with the intent to distribute the drug. McCreary-Redd filed a motion to exclude Agent Lewis's testimony, which the district court denied.

The jury trial took place in April 2009. When Agent Lewis testified, McCreary-Redd again sought to preclude his testimony, but the district court overruled his objection.

Also relevant for the purposes of this appeal was the testimony of Agent Bukowski. Agent Bukowski described his December 2004 interview with McCreary-Redd in which the latter confessed to having purchased crack cocaine from three individuals named Bazzy, Buck, and Dee at an apartment belonging to a man who went by the name Johnny. The agent said that he was able

to identify all four individuals and to obtain the number of Johnny's apartment, which was in the housing project where McCreary-Redd was arrested.

Officers Lee and Taylor also testified at trial, with Officer Lee relating the details of his encounter with McCreary-Redd and the resulting arrest, including the fact that McCreary-Redd was found in possession of a handgun and a vial containing crack cocaine. As for Officer Taylor, he described the housing project where McCreary-Redd was arrested as being located in a high-crime area of Knoxville.

The jury found McCreary-Redd guilty on the following four of the six counts charged in the superseding indictment: conspiracy to possess crack cocaine (a lesser-included offense of count one), being a felon in possession of a firearm (count three), possession of crack cocaine (a lesser-included offense of count four), and criminal contempt (count six). It acquitted him on counts two (carrying a firearm while conspiring to distribute crack cocaine) and five (carrying a firearm while possessing crack cocaine with the intent to distribute the drug).

McCreary-Redd was sentenced to an aggregate of 70 months' imprisonment. This timely appeal followed.

## II. ANALYSIS

### A.    Overview

On appeal, McCreary-Redd argues that the district court erred by (1) finding that he, not the government, breached the plea agreement; (2) denying his motion to dismiss the additional charges in the superseding indictment for prosecutorial vindictiveness; (3) denying his motion to reconsider his motion to suppress evidence; (4) permitting Agent Lewis to testify at trial that the amount of

crack cocaine found on McCreary-Redd was consistent with an intent to distribute the drug; and (5) denying his motion to dismiss counts one and two of the superseding indictment for lack of corroborating evidence. Each of these claims is addressed in turn below.

**B.    The district court's finding that McCreary-Redd breached the plea agreement**

McCreary-Redd first argues that the district court erred when it denied his motion to declare the plea agreement void on the grounds that the government violated the agreement. In addressing this issue, the magistrate judge found that the agreement was nullified both by this court's remand and by McCreary-Redd's entering a plea of not guilty following the remand.

The district court disagreed in part with the analysis of the magistrate judge, holding that the *McCreary-Redd I* remand vacated only McCreary-Redd's guilty plea, but not the plea agreement itself. Instead, the district court concluded, McCreary-Redd was the one who nullified the plea agreement, and that he did so on two occasions: (1) when he filed a pro se supplemental brief with this court in *McCreary-Redd I* challenging his conviction, and (2) when he entered a not-guilty plea on remand.

McCreary-Redd disputes this conclusion, contending that the government violated the terms of the plea agreement by not "investigating" the information that he had offered pursuant to the cooperation provisions of his plea agreement "in order to inform the Trial Court of its true value." In addition, McCreary-Redd contests the district court's conclusion that the *McCreary-Redd I* decision itself did not nullify the plea agreement. Underlying both of these arguments is McCreary-Redd's desire to preclude the government from using the information obtained in the December 2004 interview as a basis for the additional counts in the superseding indictment.

We need not further address the issue of how and when the plea agreement was nullified, however, because the only charge that McCreary-Redd was convicted of that was primarily based on the information that he communicated in December 2004 was conspiring to possess crack cocaine (a lesser-included offense of count one of the superseding indictment). But McCreary-Redd was sentenced to only 12 months' imprisonment on this conspiracy count, which runs concurrently with the 12 months' imprisonment for possessing crack cocaine (a lesser-included offense of count four), as well as with the 70 months' imprisonment that was given for both being a felon in possession of a firearm (count three) and criminal contempt (count six). The supervised release that is associated with McCreary-Redd's conspiracy conviction also runs concurrently with the supervised release that was imposed for the other three counts.

Because the punishment associated with McCreary-Redd's conspiracy and criminal contempt convictions "do not add any length to [his] overall terms of imprisonment," any error that the district court might have made in permitting the government to pursue these charges against McCreary-Redd was harmless. *See United States v. Burns*, 298 F.3d 523, 544 (6th Cir. 2002). We will therefore exercise our discretion to decline to further consider the issue. *See Barnes v. United States*, 412 U.S. 837, 848 n.16 (1973); *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976); *Ethridge v. United States*, 494 F.2d 351, 351-52 (6th Cir. 1974), *cert. denied*, 419 U.S. 1025 (1975). Accordingly, we reject McCreary-Redd's argument regarding nullification of the plea agreement.

**C.       Denial of McCreary-Redd's motion to dismiss for prosecutorial vindictiveness**

McCreary-Redd next argues that the district court erred in denying his motion to dismiss the superseding indictment based upon prosecutorial vindictiveness. He excludes the criminal contempt

charge (count six) from this claim because that charge arose from conduct occurring after the original indictment was filed. But McCreary-Redd maintains that the charges for conspiracy and for carrying a weapon in furtherance of a conspiracy were added in retaliation for him refusing to plead guilty on remand.

This court has held that "[d]ue process prohibits an individual from being punished for exercising a protected statutory or constitutional right." *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (citation and internal quotation marks omitted). Due process, however, "is not offended by all possibilities of increased punishment," *Poole*, 407 F.3d at 774 (citation omitted), and instead protects against only those actions showing either "actual vindictiveness" or "a realistic likelihood of vindictiveness." *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003) (citation omitted). Actual vindictiveness is demonstrated by "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," a showing that is "exceedingly difficult" to make. *Id*. (citation omitted). The realistic-likelihood-of-vindictiveness standard examines two factors: "(1) the prosecutor's 'stake' in deterring the exercise of a protected right and (2) the unreasonableness of his actions." *Poole*, 407 F.3d at 776 (internal citation omitted).

If there is a reasonable likelihood that the government acted vindictively, then a presumption of vindictiveness is created and the government bears the burden of justifying the challenged action. *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001). "[O]nly objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness." *Id.* at 482

(citation omitted). We review a district court's ruling on a prosecutorial-vindictiveness claim under the abuse-of-discretion standard. *Poole*, 407 F.3d at 772.

As an initial matter, McCreary-Redd must identify a protected right that he exercised prior to the allegedly vindictive government conduct. Unhelpfully, he has failed to do so on appeal. But McCreary-Redd did contend in his brief filed in the district court that the government added charges in the superseding indictment as punishment for exercising his right to appeal his conviction following his guilty plea and for exercising his right to a trial by not pleading guilty following this court's remand.

In addressing this issue, we must first determine whether the prosecution had a stake in deterring McCreary-Redd from exercising either of these rights. The Supreme Court noted in *Blackledge v. Perry*, 417 U.S. 21 (1974), that prosecutors have an incentive to discourage defendants from exercising appellate rights. *Id*. at 27. Perry was convicted of a misdemeanor in a North Carolina state court that had exclusive jurisdiction over misdemeanors. He received a six-month prison sentence. Under North Carolina law, an appeal entitled Perry to a trial de novo in the Superior Court, but when he filed a notice of appeal in that court, the prosecution obtained an indictment from a grand jury charging Perry with a felony arising out of the same conduct for which he had previously been convicted.

The Supreme Court in *Blackledge* reasoned that the prosecutor had a stake in discouraging defendants, like Perry, from appealing their misdemeanor convictions because "such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free." *Id*. As the

Court later explained in *Goodwin*, "the likelihood of vindictiveness justified a presumption that would free defendants of apprehension of such a retaliatory motivation on the part of the prosecutor." *Goodwin*, 457 U.S. at 376 (summarizing *Blackledge*). Unlike in *Blackledge*, McCreary-Redd's appeal did not automatically entitle him to a new trial. We nevertheless conclude that the prosecutor in this case had a stake in discouraging the appeal because it similarly required the expenditure of additional resources and could have potentially resulted in McCreary-Redd going free. *Blackledge* therefore directs us to apply a presumption of vindictiveness to the prosecutor's conduct following McCreary-Redd's exercising his appellate rights.

In contrast, there is no presumption of vindictiveness where a prosecutor presses more serious charges against a defendant following a failed plea-bargaining process. *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (recognizing that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer"). The Court also "has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Id*. at 364. "[A]ctual retaliatory behavior is [therefore] acceptable, at least in the plea bargaining context." *United States v. Andrews*, 633 F.2d 449, 456 (6th Cir. 1980); *see also United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001) (holding that where "charges are brought simply as the result of failure of the plea bargaining process, they are not vindictive"). Under this precedent, we need consider only whether the government acted vindictively in deterring McCreary-Redd from exercising his right to appeal his conviction.

-15-

Having determined that the prosecutor had a stake in deterring McCreary-Redd from appealing, we now turn to the second factor—whether the prosecutor's conduct was unreasonable. *See Poole*, 407 F.3d at 774. The most persuasive evidence in this regard is that, following the remand from this court, the prosecutor offered McCreary-Redd the opportunity to replead to the three counts contained in the original indictment and further agreed to recommend the same 123-month sentence that McCreary-Redd had received for his now-vacated conviction. This offer was made even though the government by this point had additional information about McCreary-Redd's drug-dealing activities and even though McCreary-Redd had absconded from a halfway house while he was on pretrial release. As the district court concluded, "such an offer by the prosecutor, under these circumstances, falls woefully short of 'unreasonable conduct.'"

In addition, the two conspiracy charges in the superseding indictment were based on information unavailable to the government when it filed the original indictment and first entered into plea negotiations with McCreary-Redd. "If the prosecution can show that the additional charges were not brought earlier because they were based on new evidence, it will successfully rebut a showing of vindictiveness." *Suarez*, 263 F.3d at 480 (holding that a superseding indictment was not vindictive because it "was based to some extent on evidence unavailable at the time of the first indictment"). This court, moreover, has upheld convictions based on superseding indictments where the evidence supporting the additional charges consisted of statements made to law enforcement officials during the investigation of the case. *See United States v. Roach*, 502 F.3d 425, 445 (6th Cir. 2007) (rejecting a prosecutorial-vindictiveness claim where the additional charges were based on a statement that the defendant had given to the Tennessee Bureau of Investigation).

In light of the fact that the prosecutor offered to allow McCreary-Redd to replead to the charges in the original indictment, and because the additional charges in the superseding indictment were based on previously unavailable information, we conclude that the government's conduct was reasonable. The district court accordingly did not err in denying McCreary-Redd's motion to dismiss for prosecutorial vindictiveness.

**D.      Denial of McCreary-Redd's motion to reconsider his motion to suppress**

In addition to challenging the district court's ruling as to his breach of the plea agreement and its denial of his motion to dismiss the superseding indictment, McCreary-Redd appeals the district court's denial of his motion to reconsider the motion to suppress that he had filed prior to entering into the plea agreement. The magistrate judge had recommended granting this motion in its entirety, but the district court granted it only as to the statements that McCreary-Redd had made following his arrest. Unlike the magistrate judge, the district court found that McCreary-Redd consented to a search of his person by turning his back and raising his arms when Officer Lee asked permission to search. McCreary-Redd did not preserve his right to appeal this ruling in his plea agreement.

Following this court's decision to vacate his conviction and remand the case, McCreary-Redd filed a motion in the district court for it to reconsider his motion to suppress. The district court denied the motion, holding that both the law-of-the-case doctrine and the mandate rule precluded further consideration of the issue. McCreary-Redd argues on appeal that this determination was in error.

Regarding the law-of-the-case doctrine, this court has consistently held that "[a] party that fails to appeal an issue waives his right to raise the issue before the district court on remand or before

this court on appeal after remand." *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532 (6th Cir. 2008) (brackets, citation, and internal quotation marks omitted). The law-of-the-case doctrine thus "bars challenges to a decision made at a previous stage of litigation which could have been challenged in a prior appeal, but were not." *Id*. (citation omitted).

McCreary-Redd acknowledges this caselaw, but points out that the plea agreement precluded his ability to appeal the denial of the suppression motion. We find this argument unpersuasive, however, because the plea agreement precluded McCreary-Redd from appealing his conviction as well, but he challenged it anyway in his pro se brief to this court. McCreary-Redd has not pointed to any justification for challenging only his conviction and not the suppression ruling where the plea agreement precluded him from appealing both. As the district court concluded, "[h]aving entered into the fray, the defendant should have done so on all potential issues." We therefore conclude that McCreary-Redd has waived his right to appeal this issue by not raising it in his first appeal.

In addition, the mandate rule precludes McCreary-Redd from resurrecting his suppression motion on remand. This rule "has two components—the limited remand rule, which arises from action by an appellate court, and the waiver rule, which arises from action (or inaction) by one of the parties." *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003). The *O'Dell* court further explained that

> [t]he mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. Likewise, where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so.

*Id*. (citation and internal quotation marks omitted) (emphasis removed).

To properly assess the scope of the remand from *McCreary-Redd I*, we must first determine whether this court issued a limited or general remand. "A limited remand must explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate." *United States v. Obi*, 542 F.3d 148, 154 (6th Cir. 2008) (citation and internal quotation marks omitted). "General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand." *Id*. (citation omitted). Certain factors distinguish between the two types of remands, such as "whether specific language in the remand clearly limits the scope of subsequent proceedings, whether the appellate court explicitly articulated the reasons for its remand, whether the appellate court articulated a prescribed chain of events with particularity, and whether multiple issues are involved (which, if present, suggest a general mandate)." *United States v. Guzman*, 48 F. App'x 158, 161 (6th Cir. 2002).

In the present case, the remand from *McCreary-Redd I* stated that "we **VACATE** the guilty plea on counts two and three and **REMAND** for pleading anew on the grounds that the district court failed to determine that McCreary-Redd understood the nature of the charges against him." *McCreary-Redd I*, 475 F.3d at 727 (emphasis in original). The *Guzman* factors weigh in favor of concluding that this remand was a limited one. This court restricted the scope of subsequent proceedings to "pleading anew" and also articulated its reasons for the remand: the district court's failure "to determine whether McCreary-Redd understood the nature of the charges against him." This language thus limited the remand to ensuring that there was a sufficient factual basis for

McCreary-Redd's conviction and that McCreary-Redd fully understood the nature of the charges against him.

The reconsideration of McCreary-Redd's suppression motion falls outside the parameters of this limited remand. McCreary-Redd elected not to pursue this issue in his first appeal and, as a result, this court made no mention of it in the remand order. Consequently, both the law-of-the-case doctrine and the mandate rule bar relitigation of the motion to suppress. The district court therefore did not err in denying McCreary-Redd's motion to reconsider his earlier suppression motion.

**E.      Denial of McCreary-Redd's motion to exclude the testimony of Agent Lewis**

McCreary-Redd further argues that the trial court erred by denying his motion to preclude the expert testimony of Agent Lewis, asserting that Lewis improperly testified as to whether McCreary-Redd intended to distribute crack cocaine. According to McCreary-Redd, the admission of this evidence violated Rule 704(b) of the Federal Rules of Evidence, which states that

> [n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 704(b).

We apply the abuse-of-discretion standard when evaluating a district court's decision to admit expert testimony. *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 258 (6th Cir. 2001). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Brown v. Raymond Corp.*, 432 F.3d 640, 647 (6th Cir. 2005) (citation and internal quotation marks omitted).

"Our court regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman." *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (citation omitted). Law enforcement officers, moreover, "are routinely allowed to testify that circumstances are consistent with distribution of drugs rather than personal use." *Id*. (citing cases). When analyzing the admissibility of a law enforcement official's expert testimony under Rule 704(b), a court should examine "whether the expert actually referred to the intent of the defendant, or, instead, simply described in general terms the common practices of those who clearly do possess the requisite intent." *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004) (citation omitted).

In this case, the government called Agent Lewis as an expert on narcotics trafficking. After providing general information regarding cocaine production, distribution, and use, Lewis opined that the manner in which the crack cocaine found on McCreary-Redd was packaged and the overall amount of the drugs was consistent with an intent to distribute them. This conclusion, Agent Lewis clarified, was

> [b]ased on just the drug quantity, no matter—Any other circumstances wouldn't be relevant. Just looking at the drugs, from—anybody that possessed drugs that look like this, I would say it was possession for resale, based on the number of rocks, the size of the rocks, and the fact that there are other larger rocks that could easily be cut into the 20-dollar rocks, and the overall weight of the drugs. So the drugs, separate from everything else, even if I didn't know anything else about the case, that would be my opinion.

This case is essentially indistinguishable from *Swafford*, where this court found no error in the district court permitting a DEA agent to testify that the defendant's possession of

methamphetamine was consistent with the intent to distribute the drug. *See Swafford*, 385 F.3d at 1029-30. The agent arrived at this conclusion "[b]ecause you have the amount, 2 1/2, maybe— approximately 2 1/2 ounces, you've got the blender where it's been chopped up so it can be weighed out correctly on the scales, then you have the baggies with the corners cut out of them." *Id*. at 1029 n.3. Moreover, the district court had "properly cautioned the jury" that it was not required to accept the agent's opinion as a fact. *Id*. at 1030 n.4.

Agent Lewis, like the agent in *Swafford*, testified that his opinion as to the distribution issue was based on the quantity of crack cocaine found and on the way in which the drug had been divided. And McCreary-Redd has neither demonstrated nor even alleged that the district court erred in instructing the jury as to the significance of the expert testimony. We therefore conclude that the district court did not err in denying McCreary-Redd's motion to exclude Agent Lewis's testimony. In any event, McCreary-Redd's conviction of the lesser possession offenses, rather than the distribution offenses, makes clear that any error was harmless.

**F.       Denial of McCreary-Redd's motion to dismiss for failure to corroborate his statements**

Finally, McCreary-Redd asserts that the district court erred in denying his motion pursuant to Rule 29 of the Federal Rules of Criminal Procedure to dismiss counts one (conspiracy to distribute crack cocaine) and two (brandishing a firearm during a drug-trafficking crime) of the indictment for lack of corroborating evidence. Both of these counts were added in the superseding indictment and were based on information that McCreary-Redd provided to Agent Bukowski and Officer Kingsbury in December 2004 pursuant to the cooperation provision of the plea agreement.

The district court denied this motion during trial and, of these two counts, McCreary-Redd was convicted only of conspiracy to *possess* crack cocaine, the lesser charge of count one.  And, as we noted in Part II.B. above, the sentence that was imposed for the conspiracy-to-possess charge did not add to the overall length of his sentence.  Accordingly, we conclude that even if the district court erred in denying McCreary-Redd's Rule 29 motion, this denial was harmless because none of the information that McCreary-Redd contends was insufficiently corroborated formed the basis for his ultimate punishment.  *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.