*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0211p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 04-5016

HAMPTON POOLE,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20026—Samuel H. Mays, Jr., District Judge.

Argued: March 18, 2005

Decided and Filed: May 10, 2005

Before: MERRITT and ROGERS, Circuit Judges; HOOD, Chief District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Stephen P. Hall, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** April R. Goode, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Stephen P. Hall, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

HOOD, Chief District Judge. Hampton Poole ("Poole") was indicted on January 29, 2002, for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). A trial was held on January 8-10, 2003, but a mistrial was declared because jurors could not reach a unanimous verdict. A superseding indictment, charging Poole with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), possession of a firearm during the commission of a drug crime, in violation of 18 U.S.C. § 924(c), and possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), was handed down on February 18, 2003. A second trial was

---

[*]The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

held on September 10-12, 2003, at the conclusion of which Poole was found guilty of all three offenses. On December 17, 2003, Poole was sentenced to a total of 322 months of imprisonment.

On appeal, Poole argues that the district court erred in denying his motion to suppress evidence and in denying his motion to dismiss the superseding indictment. Further, Poole seeks vacation of his sentence under *United States v. Booker*, 125 S. Ct. 738 (2005). For the reasons stated below, we **AFFIRM** Poole's conviction, but **VACATE** and **REMAND** for resentencing consistent with the Supreme Court's decision in *United States v. Booker*.

## I. FACTUAL AND PROCEDURAL HISTORY

On the morning of April 7, 2001, while responding to a disturbance call, Officer Larry Dyer ("Dyer") of the Memphis, Tennessee Police Department, spoke with a known female drug addict. This female advised Dyer that the streets needed cleaning up and volunteered to show him some locations of ongoing drug sales in the area. One such location was the residence located at 695 Pearce. Officer Dyer testified that the Department had received numerous complaints about drug sales at the rear of this residence, and that he had received similar information from his co-workers. Officer Dyer also testified that, by means of personal observations of the location, he knew a high volume of known drug addicts were "in and out of there." Dyer stated that neither he nor his patrol partner shared their information concerning 695 Pearce with the cooperating female prior to her pointing out the residence as a location where she had previously purchased narcotics.

After obtaining information from the cooperating female regarding the procedure of her past drug buys at 695 Pearce, and a description of the individual who "served" her the drugs, Dyer and his patrol partner set up a controlled buy. The cooperating individual indicated that she would assist the officers in making the purchase, but informed the officers that she was going to need some money to do so. Officer Dyer provided his own money, in the form of a ten dollar bill, to the cooperating individual for the buy. Before giving it to her, Officer Dyer recorded the serial number of the bill in his notebook. The apparent understanding between the officers and the cooperating witness was that she would follow the routine she had described regarding prior purchases of narcotics from that residence and, in order to ensure her safety, the officers would treat her in the same fashion as any other suspect.

After dropping the cooperating female off a few blocks away from 695 Pearce, Officer Dyer and his partner took their positions in an alleyway behind the rear boundary of the backyard. While their presence was hidden by some shrubbery, Officer Dyer testified that the officers had nothing obstructing their view and that they could clearly observe the rear of 695 Pearce. As planned, the female entered the yard and approached the back door, which was standing open. The officers observed Poole step out onto the back step and speak with the cooperating female. Dyer testified that he was too far away from the conversation to hear what was said; however, he illustrated what he observed:

> The female handed Mr. Poole one bill, which was my ten dollar bill, because that's all she had on her. And he exchanged - - dropped something in this fashion, like pitch fingers, into her hand, indicative of one rock or a one rock sale into her hand in that manner.

Based on the information that he possessed, combined with his training and experience with such transactions, Officer Dyer testified that he believed he had witnessed a one rock crack cocaine sale. As a result, Officer Dyer and his partner began to approach Poole in order to take him into custody. Officer Dyer described his approach:

> Well, again, we just - - you know, I was trying to get to him as quickly as possible mainly initially, anyway, because of the, you know, crack cocaine and just really any

drugs so easily disposed of and destroyed, that in an arrest situation like that, especially based on my experience, you've got to, you know, detain the individual quickly as possible because they can destroy the evidence and whatnot.

Dyer testified that as he approached, in uniform with pistol drawn, he advised the Defendant, "police, halt, stop." According to Officer Dyer, upon seeing him coming, Poole immediately turned to go into the house. When Poole turned, Officer Dyer saw a black pistol in Poole's front waistband. The pistol's presence intensified the situation such that Officer Dyer increased his pace to a "full run" and was "just feet behind [Poole]." Poole ran into the residence with Officer Dyer following close behind. As Officer Dyer pursued Poole into a bedroom, Poole grabbed the pistol and jumped onto a bed. Officer Dyer testified that he commanded Poole to "let me see his hands," however, Poole did not do so, and kept one hand underneath his body. After securing Poole, Officer Dyer rolled him over and found the loaded pistol lying underneath him. Testimony established that, during the encounter, there were approximately four other individuals present in the bedroom, along with a number of people in an adjoining kitchen; everyone present was secured.

Officer Dyer testified that while doing a protective sweep of the bedroom, he recovered crack cocaine and razors from a plate located on top of a dresser. The ten dollar bill was recovered from Poole's front pocket, and the officers recovered a rock of crack cocaine from the cooperating female. At this point, Officer Dyer and his partner cleared all the occupants from the house into the backyard. Officer Dyer took Poole to a squad car where officers asked him to sign a consent to search form; Poole signed. After the consent to search form was executed, the officers re-entered the home and conducted a search, discovering an unlabeled bottle containing what was determined to be Tylenol-3. There was no prescription for the Tylenol-3; however, Poole was not charged in relation to it.

At the hearing regarding Poole's motion to suppress, and in addition to the above testimony by Officer Dyer, Magistrate Judge Allen heard from the defendant's brother, Joe Poole, and the defendant's friend, Andre Patton. The argument that Poole submitted to the magistrate judge in support of his motion to suppress was that the police officers entered his home without a warrant, permission, or lawful authority, seized him, and searched the home in violation of defendant's Fourth Amendment right to the privacy and security of his abode. Following the suppression hearing, Magistrate Judge Allen, in his proposed findings of fact, proposed conclusion of law, and recommended disposition, found that Officer Dyer had probable cause to arrest the defendant and that Officer Dyer followed a reasonable course of action in effectuating that arrest. Specifically, the magistrate judge found that exigent circumstances justified Dyer's search of Poole for the pistol and that, while Dyer did not have probable cause to search the top of the dresser, Poole's voluntary consent to search the premises would have inevitably led to the discovery of the drugs on the dresser.

After reviewing the defendant's objections and the record as a whole, the district court adopted all of Magistrate Judge Allen's findings, with the exception of the finding that the officers did not have probable cause to search the top of the dresser. In concluding that the search of the dresser was justified, the district court held:

> Officer Dyer found himself in a potentially hostile situation in which he reasonably concluded and ultimately discovered that the defendant was armed and in which other weapons might easily be available. Thus, exigent circumstances continued to exist and the top of the dresser was a logical place to seek additional weapons.

Accordingly, by order dated October 31, 2002, the district court denied Poole's motion to suppress in its entirety.

On January 8, 2003, Poole proceeded to trial. On the first day of trial, the defense orally moved the court to preclude the government from offering any evidence about the crack cocaine recovered by Officer Dyer. The court granted this oral motion. During the trial, the defense objected to the government's attempts to adduce testimony from Officer Dyer as to the reason for his surveillance of 695 Pearce. The court sustained the objections, thereby limiting the government's efforts to lay a foundation for the officers' actions at 695 Pearce. At the trial, defense presented witnesses that disputed the fact that the bedroom where the pistol was found was Poole's. The defense attempted to show that Poole never went outside to sell crack, and that it was his brother who was outside when the officers approached. Defense witnesses also indicated that the officers did not find the gun under Poole. On January 10, 2003, after the court found the jury to be deadlocked, the case was declared a mistrial. Both parties agreed to the mistrial. The court allowed both sides to discuss the trial with the jury members.

On February 18, 2003, a superseding indictment was returned against Poole. The additional charges consisted of one count of possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and one count of possessing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

On March 18, 2003, Poole filed a motion to dismiss the superseding indictment for vindictive prosecution. The court denied Poole's motion to dismiss, specifically finding that there was "no evidence of actual vindictiveness" by the government, and went on to hold that, based upon an objective review of the facts, "no 'realistic likelihood of vindictiveness'" was present.

During a second trial in September 2003, Poole was convicted on all three counts and sentenced to three hundred twenty-two (322) months of imprisonment. Poole filed a timely notice of appeal.

## II. STANDARD OF REVIEW

Factual findings supporting a district court's ruling on a motion to suppress are upheld unless clearly erroneous, but "[t]he court's final determination as to the reasonableness of the search is a question of law reviewed de novo." *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003) (upholding the district court's denial of a motion to suppress evidence that was found during a customs inspection). Where the district court has denied the motion to suppress, "the appellate court must consider the evidence in the light most favorable to the government." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc decision upholding the district court's denial of a motion to suppress evidence that was found during a search of the defendant's vehicle).

The district court's denial of a motion to dismiss based upon allegations of vindictive prosecution is reviewed under an abuse of discretion standard. *United States v. Suarez,* 263 F.3d 468, 476 (6th Cir. 2001). The Court has, in the past, also cited the "clearly erroneous" standard in evaluating a district court's finding of no vindictiveness. *See United States v. Sammons,* 918 F.2d 592, 601 (6th Cir. 1990) ("defendant has not directed our attention to anything on the record that would cause us to question the district court's findings, much less find them clearly erroneous").

## III. ANALYSIS

### A.     Motion to Suppress

Poole claims that the district court erred in failing to suppress any and all evidence found by the officers inside 695 Pearce as the incursion onto the curtilage of his home was in violation of the Fourth Amendment. It does not appear, however, that the curtilage issue was raised in the district court. Appellant's suppression motion was based on the premise that the police officers entered his home without a warrant, permission, or lawful authority, seized him, and searched the home, in

violation of his Fourth Amendment right to the privacy and security of his abode. In fact, a review of Appellant's motion to suppress, Appellant's post-hearing memorandum in support of his motion to suppress, and Appellant's objections to the Report and Recommendation of the U.S. Magistrate Judge regarding the suppression issue demonstrates that curtilage was never mentioned at the district court level.

As a general rule, this Court does not address on appeal issues that were not raised and ruled upon in the district court, but may address such issues "in exceptional circumstances" or where application of the rule would result in a "plain miscarriage of justice." *United States v. $100,375.00 in United States Currency,* 70 F.3d 438, 441 (6th Cir. 1995); *United States v. Pickett,* 941 F.2d 411, 415 (6th Cir. 1991); *see also, United States v. Wright,* 343 F.3d 849, 867 (6th Cir. 2003), *cert. denied,* 124 S. Ct. 2016 (2004). Upon review of the record, it is clear that no "exceptional circumstances" exist**.** It is also clear that application of the general rule, in this instance, would not result in a "plain miscarriage of justice." Even if we were to consider the curtilage issue, the officers here merely looked into Appellant's back yard from their position in the public alley. No violation of the Fourth Amendment occurred. *See, e.g., California v. Ciraola,* 476 U.S. 207, 213 (1986).

Second, Poole asserts that the district court erred in holding that "any Fourth Amendment violation was cured by the defendant signing the consent form following his arrest." Appellant's Br. at 22. This, however, was not the district court's holding. The district court did not accept the magistrate's finding that consent cured any Fourth Amendment violation; instead, it held, Officer Dyer's seizure of crack cocaine and razors in Poole's house immediately following Poole's arrest was justified by the exigent circumstance of pursuing a feeling felon. This finding was proper. Exigent circumstances justified Officer Dyer's original warrantless entry into the house. After Dyer had handcuffed Poole and secured the four other people in the room, his seizure of the crack cocaine and razors found on the dresser near Poole was the product of a permissible search incident to arrest, because the dresser would have been within Poole's reach had he not been handcuffed. A search incident to arrest may encompass the areas that would be within the defendant's reach, even when the defendant is restrained. *See Northrop v. Trippett,* 265 F.3d 372, 379 (6th Cir. 2001). Further, Dyer's seizure of the crack cocaine from the top of the dresser arguably fell within the "plain view" doctrine.

## B.      Motion to Dismiss for Vindictive Prosecution

Appellant claims that the district court erred in denying his motion to dismiss the superseding indictment as the additional charges - possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) - are the result of vindictive prosecution and therefore violate the Due Process Clause. Both of these charges grew out of the same occurrence as the original offense and could have been brought in the initial indictment. The charges, however,  were brought following a mistrial on the initial indictment.

It is undeniable that due process prohibits an individual from being punished for exercising a protected statutory or constitutional right. *United States v. Goodwin,* 457 U.S. 368, 372 (1982). However, as the United States Supreme Court has made clear*,* "the Due Process Clause is not offended by all possibilities of increased punishment...but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge v. Perry*, 417 U.S. 21, 27 (1974). There are two approaches to showing prosecutorial vindictiveness: A defendant can show "actual vindictiveness," by producing "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," or the Court can find a presumption of vindictiveness by applying the "realistic likelihood of vindictiveness," standard which focuses on the prosecutor's "stake" in deterring the exercise of a protected right and the unreasonableness of his actions. *United States v.*

*Dupree,* 323 F.3d 480, 489 (6th Cir. 2003), *citing Bragan v. Poindexter,* 249 F.3d 476, 481-82 (6th Cir. 2001).

While the United States Supreme Court has addressed the issue of prosecutorial vindictiveness, it has not examined the factual scenario present in this case, *i.e.*, when the defendant's allegation of prosecutorial vindictiveness arises out of a superseding indictment sought after an initial mistrial. Of the four Supreme Court cases dealing with prosecutorial vindictiveness and relevant to our inquiry, two focus on vindictiveness as it applies to the enhancement of penalties and charges after a successful appeal. *North Carolina v. Pearce,* 395 U.S. 711 (1969), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989), and *Blackledge v. Perry,* 417 U.S. 21 (1974). The other two address prosecutorial enhancement of charges in a pre-trial setting. *Bordenkircher v. Hayes,* 434 U.S. 357 (1978), and *United States v. Goodwin,* 457 U.S. 368 (1982).

In *North Carolina v. Pearce,* the Supreme Court held that a presumption of vindictiveness arises when a state trial judge increases the punishment imposed at the first trial after the defendant is re-convicted of the same offense following a successful appeal and new trial. *Pearce,* 395 U.S. at 723-725. The Court stated that this presumption may be overcome only by objective information in the record justifying the increased sentence. *Id.* at 726.

Years later, the Court applied the reasoning of *Pearce* to confront the problem found in *Blackledge v. Perry.* In *Blackledge,* a prison inmate was charged and convicted in a state district court of a misdemeanor offense and, after he exercised his right to appeal and obtain a trial *de novo* in the superior court, the prosecutor obtained an indictment for a felony offense based on the same conduct. *Blackledge v. Perry,* 417 U.S. 21 (1974). The Supreme Court held that this conduct violated due process and explained,

> A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals -- by "upping the ante" through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy -- the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial.

*Id.*, at 27-28. Thus, "[b]oth *Pearce* and *Blackledge* involved the defendant's exercise of a procedural right that caused a complete retrial after he had been once tried and convicted." *United States v. Goodwin,* 457 U.S. 368, 376 (1982).

In *Bordenkircher v. Hayes,* 434 U.S. 357 (1978), the Supreme Court considered an allegation of vindictiveness arising in a pretrial setting. During plea negotiations, the state prosecutor in *Bordenkircher* threatened the defendant that if he refused to plead guilty to forgery, the offense with which he was originally charged, the prosecutor would bring habitual criminal offender charges as well. *Bordenkircher,* 434 U.S. at 358-359. When the defendant chose not to accept the plea and instead go forth with trial, the prosecutor made good on his threat. *Id.* The defendant was convicted of the more severe charges. *Id.* In finding no due process violation, the Supreme Court stated that,

> the due process violation in *Pearce* and *Blackledge* "lay not in the possibility that a defendant might be deterred from the exercise of a legal right ... but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction."

*Goodwin,* 457 U.S. at 378, *quoting Bordenkircher,* 434 U.S. at 363. In declining to apply a presumption of vindictiveness, the *Bordenkircher* Court stated that the element of punishment, present in both *Pearce* and *Blackledge*, was not present in the "give-and-take" of plea negotiation, so long as the accused is "free to accept or reject the prosecution's offer." *Bordenkircher,* 434 U.S. at 363.

Similarly, in *United States v. Goodwin,* 457 U.S. 368 (1982), the Court looked at a prosecutor's pretrial decision to modify charges against the defendant. In *Goodwin*, however, there was no evidence that could give rise to an allegation of actual vindictiveness; there was no prosecutorial threat present that could influence defendant's conduct. The defendant in *Goodwin* claimed that an impermissible appearance of retaliation arose when the prosecutor obtained a four-count felony indictment after the defendant requested a jury trial on misdemeanor charges arising from the same incident. *Goodwin,* 457 U.S. at 370-371. The Supreme Court held that no due process violation was established by the facts, explaining,

> [t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted.

*Id.* at 384 (emphasis in original).

There has been no allegation of actual vindictiveness in the case *sub judice*; thus, the proper standard is whether there exists a "'realistic likelihood of vindictiveness.'" *United States v. Andrews,* 633 F.2d 449, 453 (6th Cir. 1980). In assessing the current fact situation to see if it meets the above-stated standard, the Court must weigh two factors: (1) the prosecutor's "stake" in preventing assertion of the protected right and (2) the reasonableness of the prosecutor's actions. *Andrews*, 633 F.2d at 454. The Court looks to the four cases discussed above for guidance.

In this case, the government sought the superseding indictment after the first trial ended in mistrial due to the jurors' inability to reach a unanimous verdict. In *Goodwin,* the Court reasoned that while preparing for trial a prosecutor might uncover additional information that suggests a basis for further prosecution. *Goodwin,* 457 U.S. at 381. However, once trial has begun - and certainly after conviction - it is more likely that the government has uncovered and assessed all the information available, and has determined the extent to which the defendant should be prosecuted. *Id.* This case falls somewhere in between; while the timing certainly does not compel the conclusion that a change in the indictment was a product of vindictiveness, it does make the possibility more likely than would a change at a pretrial stage.

The Court also distinguished *Goodwin* from *Blackledge* and *Pearce* on the basis of duplicative trials. *Id.* at 382-383. The Court reasoned that the prosecution's "stake" is greater when it is forced to endure a complete new trial, or "do over what it thought it had already done correctly." *Id.* at 383. Such would seem to be the case here. The government, however, argues that it did not object to the mistrial and, due to the mistrial, it was given the opportunity to reassess its manner of presenting evidence. Thus, it seems not only that the prosecution welcomed the new trial, it also realized that there was a better way to conduct it. It is difficult to see how this would prompt a prosecutor to act vindictively towards a defendant. The government's response to the mistrial - seeking a superseding indictment - was reasonable under the circumstances presented here. Accordingly, the facts presented do not establish a due process violation as they pose no "realistic likelihood of vindictiveness."

Finally, although we conclude that no presumption of vindictiveness arose here, even if the Court assumed Poole made a *prima facie* showing of vindictive prosecution, the government has

adequately rebutted any presumption of vindictiveness. In determining whether the government has rebutted a presumption of vindictiveness the relevant inquiry is whether there exists objective information in the record to justify the increased sentence or additional charges. *Goodwin*, 457 U.S. at 374.

Here, the government fully explains the increased charge by pointing to objective information relating to the mistrial. Immediately prior to jury selection, the defendant moved the court in limine to preclude the government from offering any evidence at trial about the alleged crack cocaine sale or the money recovered from Officer Dyer. In granting this motion, the Court severely inhibited the prosecution's production of evidence. This restriction allowed the defendant to attempt to discredit Officer Dyer's presence at 695 Pearce. It also enabled the defense to theorize that the defendant was not the one on the back steps and, therefore, he was not the owner of the seized firearm. The government stated that, based on post-trial jury discussion, it appeared that some jury members were confused and distracted by the lack of development in testimony regarding the entirety of the activities observed by the officers. As the district court stated, "reindictment relevant to the underlying drug trafficking offense would conceivably permit the introduction of evidence in connection with the drug transaction which was lacking in the initial trial."

Accordingly, although the Court finds that the Appellant failed to make a *prima facie* showing of vindictive prosecution, it is clear that the government has adequately rebutted any presumption of vindictiveness by showing that its decision to re-indict was not motivated by a vindictive desire to punish the defendant for exercising his right to trial, but rather a re-evaluation of the case, in light of all the evidence elicited during trial, subsequent jury discussions, and evidentiary rules affecting the admissibility of relevant evidence.

## C.    *Booker* Issue

In August 2004, two months after *Blakely v. Washington,* 124 S.Ct. 2531 (2004) was decided, Poole wrote a letter to the clerk's office requesting to preserve on appeal any *Blakely* issues relating to the sentencing enhancements he received. Poole's letter was followed by a Fed. R. App. P. 28(j) letter from Poole's appellate attorney, Federal Public Defender, Stephen B. Shankman. Shankman's letter proposed that the district court was not permitted to make the factual findings necessary to enhance Poole's sentence and, given that the district court sentenced Poole under a mandatory scheme, this Court should remand for resentencing under *Booker*.

From the Presentence Investigation Report and the Addendum thereto, it appears that the recommended sentence enhancements were based solely on Poole's criminal history. *Booker*'s holding, that the Sixth Amendment bars mandatory enhancements based on judicial fact-finding, does not apply to the "fact of a prior conviction." *United States v. Booker,* 125 S.Ct. 738, 746 (2005). This Circuit has held that this also means that criminal history enhancements do not implicate the Sixth Amendment. *United States v. Barnett,* 398 F.3d 516, 525 (6th Cir. 2005). Accordingly, there was no Sixth Amendment violation in the present case; the district court was permitted to make the factual findings necessary to enhance Poole's sentence.

Poole, however, was sentenced under a mandatory sentencing scheme. *Barnett* held that there is a presumption, under the plain error analysis, that substantial rights are affected by a sentence imposed under an impermissible mandatory sentencing scheme, even where the defendant is sentenced in the middle of the Guidelines range. *Barnett,* 398 F.3d at 525-531. Here, because Poole was sentenced under a mandatory sentencing scheme, and because the trial record does not contain "clear and specific evidence" that the sentencing court would not have sentenced Poole to a lower sentence under an advisory sentencing scheme, Poole's case appears to fall within *Barnett*. Thus, Poole enjoys a presumption that the mandatory nature of the Guidelines affected his sentence.

Accordingly, we vacate Poole's sentence and remand for resentencing consistent with *Booker* and the advisory Guidelines system.

## IV. CONCLUSION

For the reasons stated herein, we **AFFIRM** Poole's conviction, but **VACATE** Poole's sentence and **REMAND** for sentencing consistent with the Supreme Court's decision in *Booker*.