NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0304n.06

No. 24-5199

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jun 17, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| JOSHUA BROWN, | ) | |
| Defendant-Appellant. | ) ) | OPINION |
|  | ) | |

Before: SUHRHEINRICH, MOORE, and NALBANDIAN, Circuit Judges.

SUHRHEINRICH, J., delivered the opinion of the court in which NALBANDIAN, J., concurred. MOORE, J. (pp. 19–25), delivered a separate opinion concurring in the opinion in part and concurring in the judgment in part.

**SUHRHEINRICH, Circuit Judge.** Defendant Joshua Brown was convicted by a jury of distributing methamphetamine and of conspiracy to distribute methamphetamine. On appeal he claims that the superseding indictment was presumptively vindicative and that his sentence is procedurally flawed because the district court did not consider disparities among similar defendants and relied on a clearly erroneous fact. Because we find each of these arguments meritless, we **AFFIRM**.

## I. Background

Apparently, the drugs are cheaper in Atlanta, Georgia, than Shelbyville, Tennessee. Thus, an opportunity presented itself to Jason Odell, who was residing in the Dodge State Prison in South Georgia from January 2021 to January 2022. Working with fellow inmates who had connections

in Atlanta and its environs, Odell brokered deals—for a commission—between Shelbyville residents and Atlanta-based suppliers. Odell arranged four transactions for Brown, two through codefendant Jeremy Hardison and two directly with Brown. Brown bought and resold four to five kilograms of methamphetamine before police arrested him on January 7, 2022.

When he was arrested, Brown told law enforcement that he obtained ounces of methamphetamine from codefendant Hardison, who was working through Odell. Brown also admitted making four transactions through Odell, purchasing between one and two kilograms of methamphetamine on each occasion.

On April 26, 2022, the government charged Brown, Odell, and thirteen others with conspiring to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(a), and 846 from August 2021 through March 2022. Other defendants were also charged with possession with intent to distribute, distribution, and firearm offenses. Brown, however, was indicted for conspiracy only.

Brown was residing in the Coffee County Jail in Manchester, Tennessee at that time on pending state parole violations. On May 9, 2022, the same day he was arraigned, Brown was transferred to the federal authorities via a federal writ of habeas corpus *ad prosequendum*.[1]

On February 14, 2023, Brown moved to suppress his post-arrest statements, claiming a *Miranda* violation. On March 13, 2023, the government responded that it would not rely on Brown's confession at trial because it could not "meet its burden to prove the defendant did not request counsel prior to this questioning."[2] On March 28, 2023, about six weeks after Brown's

---

[1] The writ offered the standard language that "**Joshua Brown** shall remain in the custody of this Court until his case is resolved. Following resolution of Mr. Brown's case, he will be returned to the Sheriff of the Coffee County Jail, Manchester, Tennessee, unless this Court orders otherwise." Brown's detention order following arraignment also placed Brown in the "custody by the United States Marshal" to be "produced for future hearings."

[2] The court entered the parties' agreed-to order on the suppression motion on April 13, 2023.

motion, and two months before Brown's trial was originally scheduled to begin, the government

returned a superseding indictment that added three counts of distributing methamphetamine in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) to Brown's conspiracy charge.[3]

A jury convicted Brown of the conspiracy charge and two of the three substantive drug-

trafficking counts after a three-day trial.

The presentence report estimated that Brown was accountable for 4,004.5 grams of

methamphetamine, relying on Brown's post-arrest statements to the police. Brown filed an

objection, contending that the drug quantity should have been based on the trial testimony and not

his suppressed statements. He also claimed that the trial testimony established that he was

responsible for no more than between 500g and 1500g of methamphetamine mixture and that this

would result in a lower offense level. The government countered that the amount was really a

wash because, at trial, Odell testified that he had arranged four transactions for Brown, which

added up to *five* kilograms of methamphetamine.

The presentence report also deemed Brown a career offender because he had two qualifying

predicate convictions and the instant distribution convictions were felony "controlled substance

offense[s]." U.S.S.G. § 4B1.1(a).[4]

Had Brown been convicted as initially charged, he could not have been considered a career

offender, since under Sixth Circuit precedent, "conspiracy to distribute controlled substances is

---

[3] The superseding indictment dropped all but four defendants. All four were charged in Count One, the conspiracy count. The three other counts charged Brown—and only Brown—with distributing methamphetamine on three different occasions.

[4] Under the Guidelines, a criminal defendant receives a career-offender designation if: (1) he was at least eighteen years old when he committed the instant offense; (2) the instant offense was a violent or controlled-substance felony; and (3) he has committed at least two prior violent or controlled-substance felonies. U.S.S.G. § 4B1.1(a). If he satisfies all three prongs, a career offender will then receive a sentencing enhancement based on the statutory maximum applicable to his instant offense. *Id.* § 4B1.1(b). The career offender guideline establishes a criminal history category of VI. *Id.*

not a 'controlled substances offense' under § 4B1.2(b)." *United States v. Cordero*, 973 F.3d 603, 626 (6th Cir. 2020); *see also United States v. Havis*, 927 F.3d 382, 386-87 (6th Cir. 2019) (en banc) (per curiam) (holding that attempt crimes are not predicate offenses under the career offender Guideline). Because Brown's distribution convictions carried a maximum statutory 20-year penalty, the career-offender guideline set his offense level at 32. U.S.S.G. § 4B1.1(b)(3). This, incidentally, was the same offense level dictated by Brown's drug quantity on the conspiracy count. *See* U.S.S.G. § 2D1.1 (setting base offense level at 32 for offenses involving between 1.5 and 5 kilograms of methamphetamine mixture). Brown's criminal history category was VI with or without a career-offender designation. In short, Brown's total offense level and criminal history category were identical under either charging decision. The resulting Guidelines range for a total offense level of 32 and a criminal history category of VI was 210 months to 262 months.

Brown withdrew his objection to the drug quantity calculation at sentencing. After adopting the presentence report's calculation of an advisory Guidelines range of 210 to 262 months' imprisonment, the district court examined the 18 U.S.C § 3553(a) factors, highlighting Brown's evolving role in a conspiracy that involved "a lot of drugs" and "[l]ots of different individuals and players, [of] varying degrees of culpability and involvement"; as well as Brown's "tough" background and history of poor decision making. The court concluded that a sentence "towards the middle to the bottom" of the applicable Guidelines range was just, and imposed a within-Guidelines 216-month prison sentence, to run consecutively to any pending state court sentences.[5] After this pronouncement, the district court asked whether either party had any further objections. Neither did.

Brown appeals.

---

[5] The court made the three federal counts concurrent.

**II. Analysis**

**A. Prosecutorial Vindictiveness**

Prosecutors have broad discretion in charging decisions, but they cannot use that power to punish defendants for exercising their constitutional and statutory rights. *United States v. Goodwin*, 457 U.S. 368, 372, 380 n.11 (1982); *see also United States v. O'Lear*, 90 F.4th 519, 531 (6th Cir. 2024) (noting that the principle is rooted in the Fifth Amendment Due Process Clause). Brown contends that the superseding indictment was presumptively vindictive because the government "indicted [him] on the additional charges only after he successfully moved to suppress evidence," even though the factual bases for the new charges were known from the outset. He insists that "[t]he timing of [the] superseding [indictment] with three additional charges required an explanation on the record from the government."

Initially we consider the applicable standard of review. Although Brown raised the issue of vindictive prosecution in two letters he sent to the court, his trial counsel did not move to dismiss the superseding indictment on that basis. Thus, as appellate counsel acknowledged at oral argument, the correct standard under these circumstances is plain error. *See United States v. Farrad*, 895 F.3d 859, 889 (6th Cir. 2018) (holding that plain error applied where defendant represented by counsel filed a pro se motion not renewed by trial counsel); *see also United States v. Mosely*, 810 F.2d 93, 97–98 (6th Cir. 1987) (a defendant is not entitled to hybrid representation). Under this standard, Brown had to show (1) error, (2) that was plain, (3) that impacted his substantial rights, and (4) "affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted).

A defendant can challenge a vengeful charging decision by showing actual (not at issue here) or presumptive vindictiveness. A rebuttable presumption of vindictiveness arises if the defendant can show a "realistic likelihood" that a charge was vindictive. *Goodwin*, 457 U.S. at 384. This is an objective standard. *United States v Andrews*, 633 F.2d 449, 454 (6th Cir. 1980) (en banc). To meet it, a defendant must show that (1) the prosecutor has a "stake" in thwarting the defendant's attempt to assert his rights and (2) the prosecutor's behavior was unreasonable. *United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023) (internal quotation marks omitted). If the defendant makes this showing, he is entitled to a presumption of vindictiveness. The government can rebut that presumption, however, "with objective, on-the-record explanations such as governmental discovery of previously unknown evidence or previous legal impossibility." *Id.* (cleaned up). This approach attempts to balance the importance of broad discretion to bring criminal charges against the potential for abuse of that "awesome" power. *Andrews*, 633 F.2d at 453.

Brown claims that he is entitled to that presumption because, fifteen days after conceding that it could not rely on Brown's statements and eleven months after obtaining the first indictment, the government added three more charges that could have been brought in the original indictment. For support, he compares his case to *United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013) and *Zakhari*, 85 F.4th 367. In those cases, we found a rebuttable presumption of prosecutorial vindictiveness where the government added more serious charges without new evidence after the defendant presented a suppression motion that gravely threatened the prosecution's case. *See LaDeau*, 734 F.3d at 569–70 (holding that "the requisite prosecutorial stake existed" because the prosecution "was saddled with the prospect of restarting LaDeau's prosecution from scratch");

*Zakhari*, 85 F.4th at 381–82 (questioning the reasonableness of the prosecutor's conduct because the new charge was based on the very same conduct charged in the original indictment).

Like the defendants in *LaDeau* and *Zakhari*, Brown successfully moved to suppress valuable—indeed invaluable—inculpatory evidence. *See Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (noting that "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him" (internal quotation marks omitted)). In *LaDeau* and *Zakhari* we recognized that this type of motion can place a "significant" burden on the government, and thus increase the likelihood of a vindictive response. 734 F.3d at 568; 85 F.4th at 382–83.

Here, the government was factually equipped to charge Brown with distributing methamphetamine when it secured the indictment. Law enforcement learned in 2021 that Brown was distributing drugs. On October 19, 2021, they used a confidential informant to buy drugs from Brown out of a camper. Officers conducted several other controlled buys from Brown on October 20th and 27th. *Havis* and *Cordero* were on the books when Brown was indicted. Thus, the government could have charged Brown as a career offender when it secured the original indictment.

But "the prosecutor's stake is only part of the equation and must be considered alongside [the] reasonableness" of the prosecutor's actions to "decide whether 'a realistic likelihood of vindictiveness exists.'" *Zakhari*, 85 F.4th at 383 (quoting *Goodwin*, 457 U.S. at 373). The additional charges here, unlike the new charges brought in *LaDeau* and *Zakhari*, did not increase Brown's sentencing exposure. *Cf. LaDeau*, 734 F.3d at 564–65 (superseding indictment added a

five-year mandatory minimum sentence and doubled the maximum)[6]; *Zakhari*, 85 F.4th at 374, 381 (new charge increased applicable mandatory minimum by half).

Thus, this case is also like *United States v. Howell*, 17 F.4th 673 (6th Cir. 2021). There the defendant exercised his right to a jury trial by pleading not guilty.[7] *Id.* at 688. The government added a felon in possession of a firearm count to an indictment obtained sixteen months earlier, charging the defendant with bank robbery and brandishing or discharging a firearm. *Id.* at 680. Reviewing for plain error, we held that the defendant had not shown that the prosecution's actions were unreasonable because "the government did not change its theory, nor did [the new charge] bring with it 'longer mandatory minimums and maximums' than what was initially charged." *Id.* at 688 (quoting *LaDeau*, 734 F.3d at 570). Consequently, the defendant failed to show "a reasonable likelihood of vindictiveness" to warrant the presumption. *Id.*

The same is true in this case. The government did not alter its theory. The extra charges did not increase Brown's sentencing exposure. In short, nothing in the record suggests prosecutorial spite warranting a presumption of vindictiveness. "The mere appearance of vindictiveness" is insufficient to trigger a presumption against the government. *Andrews*, 633 F.2d at 455.

The Supreme Court has cautioned courts against "adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting," because "[i]n the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further

---

[6] Adding insult to injury, the prosecutor obtained the superseding indictment five days before trial. *LaDeau*, 734 F.3d at 564.

[7] Granted, a defendant's exercise of his constitutional right to a jury trial is not considered the type of action "that would reasonably provoke a vindictive response from the prosecutor." *Howell*, 17 F.4th at 688; *see also O'Lear*, 90 F.4th at 532 (holding that the government's addition of harsher charges after plea negotiations broke down was not the product of vindictive prosecution).

prosecution or he simply may come to realize that information possessed by the State has a broader significance." *Goodwin*, 457 U.S. at 381. Broad discretion is especially important in multi-defendant, multi-count drug trafficking conspiracies like this one, because the government's theory of the case likely evolves as defendants file pretrial motions, make plea deals, and agree to cooperate with the government. Furthermore, given Brown's lengthy criminal history, "the societal interest in prosecution" was strong. *See id.* at 382. Thus, the government's decision to charge him as a career offender was not an unreasonable exercise of prosecutorial discretion— certainly not under plain error.

Brown raises two further points. First, he claims that had he not been charged and convicted as a career offender, he would have continued to object to the drug quantity determination. However, that objection would not have been a game changer, because ample evidence supported the offense level of 32 without a career-offender designation. In its opinion and order on Brown's motion for a new trial or judgment of acquittal, the district court flagged the trial testimony establishing that Brown was responsible for five kilograms of methamphetamine. More importantly, it was not improper for the district court to rely on Brown's confession at sentencing. *See United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013) (stating that "*Miranda* generally does not apply at sentencing. A sentencing court may consider statements obtained in violation of *Miranda*, if they are otherwise voluntary and reliable" (cleaned up)).

Finally, Brown claims that his career offender status "had an effect on sentencing regardless of the range." But he doesn't explain *how* it was affected, and nothing in the record (or Brown's briefing) confirms this assertion. As discussed, the career offender classification had no effect on Brown's Guidelines range.

**B. Sentencing Disparities**

Section 3553(c) requires a sentencing court to "state . . . the reasons for . . . the particular sentence." 18 U.S.C. § 3553(c). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007); *United States v. Bolds*, 511 F.3d 568, 580–81 (6th Cir. 2007). This allows "for meaningful appellate review" and "promote[s] the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007).

"[A]s a procedural matter, the district judge must generally speak to arguments that are clearly presented and in dispute." *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009). A district court's failure to adequately explain its chosen sentence makes it procedurally unreasonable. *Gall*, 552 U.S. at 51. Though we typically review the procedural reasonableness of a sentence for an abuse of discretion, *United States v. Dyer*, 908 F.3d 995, 1006 (6th Cir. 2018), plain error applies to issues not objected to below. *Vonner*, 516 F.3d at 385–86. "Under th[is] 'extremely deferential' standard, we reverse only in exceptional circumstances to correct obvious errors that would result in a miscarriage of justice." *United States v. Hymes*, 19 F.4th 928, 933 (6th Cir. 2021) (citing *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018)).

Although Brown initially challenged the drug calculation in the presentence report, he withdrew that objection at the sentencing hearing, and the district court adopted the presentence report "without objections." Nor did Brown challenge the court's explanation of the sentence, once imposed. We therefore review for plain error.

### 1. Among Codefendants

Brown argues that the district court did not adequately explain why it treated similar codefendants differently. He claims error because (1) he "essentially received the same overall sentence as [Josh] Johns [240 months to Brown's 216], despite Johns's greater culpability given his assault-weapon possession," and (2) none of his other codefendants received sentences over 180 months.[8]

Section 3553(a) states that the district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

*Johns.* Brown complains that the district court failed to explain why his sentence is within striking distance of Johns', because Johns possessed an assault rifle and received "just two additional years for the possession of the assault weapon."[9] Furthermore, by the time of sentencing, Brown had served 21 months on his state parole violation, which was not counted toward his federal sentence and Johns "had no similar uncredited time in federal pretrial custody."

Brown's perception sells the district court short under any standard. After correctly stating Brown's Guidelines range, the district court raised disparity right out of the gate, before considering any other § 3553(a) factor. It asked the government where Brown ranked in terms of culpability. The government relayed that Brown moved up the ranks as the conspiracy progressed—that originally Brown went to Atlanta to buy drugs for others to distribute and then

---

[8] The government points out in its brief that the presentence report mistakenly listed Johns as receiving 24 months (instead of 240) and Hardison as receiving 108 months.

[9] Johns pleaded guilty to one count of conspiracy and was sentenced to 240 months in prison. The remaining counts against him were dismissed.

began buying large amounts to sell himself.  The court then specifically asked the government to compare him to Johns.  The government responded that

> where Mr. Brown ended up in this conspiracy is comparable with Johns, except for the fact that Johns had that firearm, was caught . . . with an assault-type . . . rifle, and that always, in my mind, Your Honor, sort of elevates the seriousness.  That may distinguish . . . Johns from this defendant.  *But in terms . . . of the harm brought to the district through the sheer amount of methamphetamine, they're . . . comparable.*

Given the undisputed fact that Johns and Brown were comparable for "the sheer amount of methamphetamine," the most salient factor in the conspiracy charge, Brown's only slightly shorter sentence is not unreasonable, as the district court's exploration of the disparity factor at sentencing revealed.  Moreover, Johns pleaded guilty, presumably in exchange for reduced charges.  Finally, to Brown's point that he did not receive credit for time served in federal pretrial custody:  as discussed in a later section of this opinion, the district court did not consider this factor because it is not allowed to consider it.

*Other Codefendants.*  Brown asserts that the district court did not explain why he received a more serious sentence than his other codefendants.  He claims that they were similarly culpable because they also traveled to Atlanta to obtain drugs, used drugs, and distributed methamphetamine.  He says that the "lack of explanation" creates the impression of arbitrariness as well as punishment since he was the only defendant to exercise his right to a trial.

We disagree.  To begin with, the district court was not required to equate Brown's sentence with his codefendants, because § 3553(a)(6) is concerned with *national* disparities among similarly situated defendants, not with disparities between coconspirators.  *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) (stating that a district court "*may*" but is not "*required*" to equate a defendant's sentence to his codefendants).  Furthermore, Brown never asked the district court to address this issue.

That's why the cases he relies on are inapposite. In *Wallace*, the defendant argued that her sentence was procedurally unreasonable because she deserved a lesser sentence than a more culpable codefendant. 597 F.3d at 806. We reversed because the district court did not sufficiently address the issue after the defendant raised it, and we could not determine whether the district court considered the disparity between the two sentences. *Id.* at 805–06. *Cf. United States v. Gahan*, 678 F. App'x 275, 278–79 (6th Cir. 2017) (distinguishing *Wallace* where the defendant rested on his sentencing memorandum "despite the fact that the government began to rebut this argument at the sentencing hearing" and the record made clear that the district court understood and rejected the defendant's argument). So too in *United States v. Robles-Alvarez*, 874 F.3d 46 (1st Cir. 2017). The First Circuit vacated the defendant's sentence because "the district court did not address the [defendant's] potentially persuasive [disparity] argument" raised in his sentencing memorandum and "renewed" at the sentencing hearing. *Id.* at 49, 52–53.

Brown's disparity argument would not have been "potentially persuasive" in any event. Having sat through Brown's trial and several sentencings, the district court was well-acquainted with the conspiracy's actors. Many of Brown's codefendants "gave detailed accounts of their involvement in the conspiracy and interactions with Brown." Others dealt in small amounts— grams and ounces. Odell, Hardison, Johns, and Brown, on the other hand, dealt in kilograms. In short, because the district court wasn't required to address this issue and it lacks merit, there is no error at all.

Finally, nothing in this record even whiffs of a "trial tax" as Brown suggests. Brown received a higher sentence than most of his codefendants because he was one of the most culpable, not because he was the only person to go to trial. Brown's sentence was still shorter than Johns', who pleaded guilty.

**2. National Disparities**

Next, Brown contends that the district court erred because it never addressed his argument about national disparities, "despite [his] lawyer spending a large part of his sentencing allocution on the argument." Brown did not object below, so plain error review applies.[10]

Moreover, it was the government that brought this issue to the table at sentencing. The government explained that it was advocating for a top-of-the Guidelines sentence (though not an upward departure) to avoid national disparities because a similarly situated defendant in a different circuit would be considered a career offender based on the conspiracy conviction, not merely the substantive drug-trafficking convictions. Because the conspiracy conviction would have, in a different circuit, carried a maximum penalty of life imprisonment, the offense level for such a defendant would be 37, not 32, resulting in a higher Guidelines range of 360 months to life. *See* U.S.S.G. § 4B1.1(b).

Brown's counsel countered by pointing to the presentence report, which provided the national average statistics for defendants similarly situated to Brown. Relying on the U.S. Sentencing Commission's JSIN database, the presentence report explained that between 2018 and 2022, 24 offenders faced sentencing under the same guidelines as Brown, for methamphetamine, with an offense level of 32 and criminal history category of VI.[11] After excluding offenders who received substantial assistance reductions, "the average length of imprisonment imposed was 183 month(s) and the median length of imprisonment imposed was 187 month(s)." On appeal Brown

---

[10] *Wallace* held that "[w]hen a defendant raises a particular, nonfrivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." 597 F.3d at 803 (cleaned up). It doesn't apply here because Brown did not specifically object below to the district court's failure to address these arguments.

[11] *Judiciary Sentencing Information*, U.S. Sent'g Comm'n, https://www.ussc.gov/guidelines/judiciary-sentencing-information (last visited May 21, 2025).

complains that the district court erred in failing to address the nearly three-year disparity between his within-Guidelines sentence and the average sentence of similarly situated national defendants.

We rejected this approach in *Hymes*. Cataloguing our caselaw, the *Hymes* court observed that while we have suggested and approved the use of Commission data as a starting point, "we have never adopted the view that district courts *must* consider national sentencing statistics." 19 F.4th at 936. And we explained why: "[a]ny other approach seemingly would elevate the Commission's statistical data over the text of the Guidelines themselves." *Id.* And that would be problematic because "the plain terms of the Guidelines" are a better compass of nationwide sentencing uniformity than "statistical reports" unvetted by Congress. *Id. Hymes* offered its own "hortatory language," "underscor[ing] that a district court that chooses to consult statistical data as part of its sentencing analysis should measure the data with 'extreme care.'" *Id.* at 938 (quoting *United States v. Freeman*, 992 F.3d 268, 298 (4th Cir. 2021) (Quattlebaum, J., dissenting)).

Not only did Brown not ask for a departure, but he also advocated for a sentence of "no more than 210 months." The district court mostly granted his request, by imposing a sentence near the bottom of his guidelines range (216 months).

In the end the district court found that Brown's sentence was justified by the nature and circumstances of a very serious offense and still imposed a sentence near the bottom of the Guidelines range. One cannot find plain error here, let alone abuse of discretion. *Cf. Simmons*, 587 F.3d at 362 ("Where a party makes a conceptually straightforward legal argument for a lower sentence . . . , the district court's decision not to address the party's argument expressly is not an error when the court otherwise discussed the specific factor and appears to have considered and implicitly rejected the argument."). We therefore conclude that Brown's sentence is procedurally reasonable.

### C. Misleading Sentencing Information

Mirroring the detention order, Brown's presentence report noted that he had been "arrested by way of a writ from the Coffee County Jail on May 9, 2022, and has been in continuous *federal* custody since that time." Brown observes that he was actually in *state* custody on loan to federal authorities pursuant to a federal writ of habeas corpus *ad prosequendum*. He claims that "[t]his error affected sentencing," because it "left the misimpression that Brown had already served more than 21 months of his federal sentence" at the time of his February 29, 2024, federal sentencing. The misleading information in turn caused the court to order that Brown's federal sentence "shall run consecutive to any sentence in the [defendant's] parole violation in Bedford County, Tennessee Circuit Court Docket Number 18836."[12] Brown posits that had the district court known that he was not receiving federal credit for this time, "then it could have reduced his federal sentence to account for it."

A sentencing court commits "significant procedural error" if it "select[s] a sentence based on clearly erroneous facts." *Gall*, 552 U.S. at 51. As Brown acknowledges, plain error review applies to this issue.

A federal defendant has the right to receive credit for time served in official detention before his sentence begins, if that time has not been credited against another sentence. 18 U.S.C. § 3585(b); *United States v. Wilson*, 503 U.S. 329, 330 (1992). Only the Attorney General or the Bureau of Prisons (through the Attorney General) can grant that credit. *Gilbert v. United States*, 64 F.4th 763, 772 n.4 (6th Cir. 2023); *see Wilson*, 503 U.S. at 333 ("Congress has indicated that computation of the credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing.").

---

[12] Brown had two pending state parole violations when he was arrested on January 6, 2022.

Furthermore, "when a State sends a prisoner to federal authorities pursuant to [a federal writ of habeas corpus *ad prosequendeum*], the prisoner is merely on loan to the federal authorities, with the State retaining primary jurisdiction over the prisoner." *United States v. White*, 874 F.3d 490, 507 (6th Cir. 2017) (cleaned up).[13] This means that the period that Brown spent in federal pretrial detention does not count towards his federal sentence. *See Gilbert*, 64 F.4th at 771; *White*, 874 F.3d at 507.

The district court committed no error. It simply ordered that Brown's federal sentence run consecutive to his state sentence. The court said nothing whatsoever about credit for time served, in either jurisdiction. The two cases Brown cites are distinguishable because both involved a court's misapprehension of a § 3553(a) factor. In *United States v. Wilson*, we found plain error affecting the defendant's substantial rights where the district court selected a sentence based on the clearly erroneous factual premise about the nature of the offense—"that she had stolen myriad financial instruments"—which "was an important factor in determining her sentence." 614 F.3d 219, 223–25 (6th Cir. 2010); 18 U.S.C. § 3553(a). In *United States v. Adams*, we held that the defendant's supervised-release-violation sentence was procedurally unreasonable because the district court relied on an impermissible factor concerning rehabilitation when determining the period of incarceration. 873 F.3d 512, 516, 519–20 (6th Cir. 2017). We find no error, plain or otherwise.

---

[13] The government asserts that "[o]ther authority suggests that the execution of a writ transfers a prisoner into federal custody, though not necessarily exclusive federal custody." For support, the government relies on *McClain v. Bureau of Prisons*, 9 F.3d 503, 504–05 (6th Cir. 1993) (per curiam). But this reading stretches that case too far. In *McClain*, the prisoner sought credit against his sentence for time spent in federal custody after he had been released on state parole. We concluded that the prisoner's release on parole from state charges essentially put him in exclusive federal custody. *Id.* at 505; *see Childress v. Coakley*, No. 4:14cv690, 2015 WL 4986768, at *7 (N.D. Ohio Aug. 19, 2015). Brown was not paroled by Tennessee authorities prior to the commencement of his federal sentence, so these cases are inapplicable here.

In short, the district court's explanations at sentencing were more than adequate, *Gall*, 552 U.S. at 50, and constituted a proper exercise of the sentencing "judge's own professional judgment." *Chavez-Meza v. United States*, 585 U.S. 109, 113 (2018) (quoting *Rita*, 551 U.S. at 356).

## III. Conclusion

We AFFIRM Brown's convictions and sentence.

**KAREN NELSON MOORE, Circuit Judge, concurring in part and concurring in the judgment in part.** I concur with the majority opinion Parts I, IIB, IIC, and III. But because I would hold that the prosecution engaged in presumptively vindictive behavior in bringing a superseding indictment adding new charges following Brown's success in suppressing his un-*Mirandized* confession, but would find that Brown's claim nevertheless fails on plain-error review, I concur in Part II.A. of the majority opinion in result only.

Prosecutors initially charged Joshua Brown, alongside several co-conspirators, with conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. But while several of his co-defendants were also charged with a variety of substantive crimes, Brown was charged with only one count of conspiracy. This was despite the fact that, as the majority states, "the government was factually equipped to charge Brown with distributing methamphetamine when it secured the indictment." Maj. Op. at 7. The government nevertheless maintained its initial charging decision until two months prior to the scheduled start of Brown's trial, when, two weeks after the government agreed to the suppression of Brown's confession to police, it issued a superseding indictment charging Brown—and Brown alone—with three additional counts of distributing methamphetamine. Brown was ultimately convicted on the conspiracy charge and two of the substantive distribution counts. And as a result of his conviction on the substantive charges, Brown qualified as a career offender under the Sentencing Guidelines and was sentenced accordingly. *See* U.S.S.G. § 4B1.1.

I believe that Brown has demonstrated that the government's conduct in filing the superseding indictment following the suppression of Brown's confession was presumptively vindictive. Moreover, the government has failed to rebut this presumption with an objective, on-

the-record explanation for its behavior. However, as explained below, I would hold that Brown's challenge fails on plain-error review.

Under the Fifth Amendment, a defendant "may challenge the government's charging decisions for actual or presumptive vindictiveness." *United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023). The theory of presumptive vindictiveness "recognizes a rebuttable presumption of vindictiveness if the defendant shows a 'realistic likelihood' that a charge was vindictive." *Id.* (quoting *United States v. Goodwin*, 457 U.S. 368, 384 (1982)). This is an objective standard: we must determine "whether a reasonable person would think there existed a realistic likelihood of vindictiveness." *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980) (en banc). To evaluate this likelihood, we "weigh two factors: (1) the prosecutor's 'stake' in preventing assertion of the protected right and (2) the reasonableness of the prosecutor's actions." *United States v. Poole*, 407 F.3d 767, 776 (6th Cir. 2005) (quoting *Andrews*, 633 F.2d at 454). "Once a reasonable likelihood is found, a presumption arises in defendant's favor and the government must rebut it 'with objective, on-the-record explanations such as governmental discovery of previously unknown evidence or previous legal impossibility.'" *Zakhari*, 85 F.4th at 379 (quoting *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013)).

The first step in our inquiry into presumptive vindictiveness is an evaluation of the government's stake in using Brown's confession. Although "routine[]' pretrial motions do not generally provide a sufficient basis for vindictiveness," *id.* at 381 (quoting *Goodwin*, 457 U.S. at 381), "[e]ach situation will necessarily turn on its own facts." *LaDeau*, 734 F.3d at 567 (quoting *Andrews*, 633 F.2d at 454). And we have emphasized that "[a] confession is like no other evidence," and that a motion to suppress a confession may be "more consequential than 'routine' pretrial motions." *Zakhari*, 85 F.4th at 382 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 296

(1991)). Here, Brown's motion to suppress put at stake his entire confession to police on the day after his arrest, which included his statements admitting to the purchase and distribution of four kilograms of methamphetamine. Without Brown's confession, the government had only (1) evidence of the two controlled buys conducted by CIs, which totaled 4.5 grams of methamphetamine, and (2) testimony from other members of the conspiracy who were also under indictment. The suppression of Brown's confession thus "presented a grave threat to the prosecution's case" because, if successful, it would force the government to find another source for its accusation that Brown was responsible for the distribution of over four kilograms of methamphetamine. *Zakhari*, 85 F.4th at 382. As a result, "the government would have been highly motivated . . . to protect" Brown's confession and "faced a much tougher trial without it." *Id.*[1]

Having concluded that the government's stake in using Brown's confession was significant, the next step in our inquiry is to weigh that stake against the "reasonableness of the prosecutor's actions" in filing the superseding indictment two weeks after Brown prevailed on his motion to suppress. *Poole*, 407 F.3d at 776. It is at this step that the majority and I diverge. The majority, for its part, concludes that because the suppression of Brown's confession did not force the government to "alter its theory" of the case, and because "nothing in the record suggests prosecutorial spite warranting a presumption of vindictiveness," the government acted reasonably in filing the superseding indictment. Maj. Op. at 8. I disagree.

---

[1] It does not matter that the government, instead of responding in opposition to Brown's motion to suppress, agreed not to use the suppressible statements at trial. The government argues that it had little stake in the suppression of Brown's confession because it "readily agreed" to Brown's suppression motion and that the suppression "represented at most a minor speedbump on the road to conviction" because the prosecution did not need to change its theory of the case. Appellee Br. at 14–15. But the government's ready agreement to Brown's motion could just have easily been due to the severely unlawful nature of the un-*Mirandized* confession. And the government does not contest that a confession is "like no other evidence," such that the suppression of Brown's confession meant that the government was forced to use inevitably weaker evidence of Brown's culpability. *Fulminante*, 499 U.S. at 296.

The government provides no explanation as to why it chose to file the superseding indictment, nor does it even attempt to explain why it chose to do so two weeks after Brown prevailed in suppressing his confession, eleven months after the initial indictment was filed, and two months before Brown's trial was scheduled to begin. And the government does not appear to contest that "[t]he charge in the superseding indictment was based on the same conduct underlying the charge in the initial indictment" and that "the prosecution obtained no evidence supporting the superseding indictment that it did not already possess prior to obtaining the initial indictment." *LaDeau*, 734 F.3d at 570. Thus, although we "must be careful about presuming vindictiveness in the pretrial context because prosecutors may 'uncover additional information that suggests a basis for further prosecution' or realize that evidence 'has broader significance,'" *Zakhari*, 85 F.4th at 381 (quoting *Goodwin*, 457 U.S. at 381), the government has failed to identify any new knowledge or change in circumstances—other than Brown's success in suppressing his confession—that could have motivated the prosecutor's decision to add the substantive charges. *See id.* (finding unreasonable the prosecutor's decision to add an additional count based on conduct that "appear[ed] to be part of the same course of conduct charged" in the initial indictment where there was "no new knowledge or change in circumstances" that could have explained the additional charge); *LaDeau*, 734 F.3d at 570–71 (concluding that the prosecution's decision to shift from a possession to a receipt theory of child pornography was unreasonable where "the evidence relating to the conspiracy remained unchanged over the entire course of the prosecution" and "there [was] no new revelation or discovery to support the government's sudden shift to a receipt theory"). The lack of any evidence in the record explaining the government's decision to file the superseding indictment lends itself to the conclusion that the government's actions were unreasonable.

In coming to the opposite conclusion, the majority relies heavily on the fact that, coincidentally, the charges added pursuant to the superseding indictment "did not increase Brown's sentencing exposure." Maj. Op. at 8. The majority cites *United States v. Howell*, 17 F.4th 673 (6th Cir. 2021), in support of this proposition. There, we held that the defendant failed to show that the prosecutor acted unreasonably in adding a felon-in-possession charge because the additional count did not "bring with it 'longer mandatory minimums and maximums' than what was initially charged." *Howell*, 17 F.4th at 688 (quoting *LaDeau*, 734 F.3d at 570). But, as Brown points out, the additional charges brought here pursuant to the superseding indictment made Brown eligible as a career offender under § 4B1.1 of the Guidelines, which as a general matter substantially increases a defendant's sentencing exposure. And the prosecution could not have known at the time it added the additional charges that Brown's sentencing exposure would be the same under Brown's base offense level and under the career-offender enhancement. Specifically, the prosecution could not have known what testimony would come out at trial as to the quantity of drugs that Brown bought and sold; without Brown's confession, the government had no guarantee that any of their witnesses—assuming all testified as planned—would testify to Brown's responsibility for over four kilograms of methamphetamine. Nor did the government know ahead of time on which charges the jury would convict or acquit Brown; had the jury's verdict been different, Brown's sentencing exposure under the enhanced and non-enhanced Guidelines provisions could well have diverged.

Despite the majority's conclusion to the contrary, prosecutors had a large stake in their ability to use Brown's confession at trial. The government provides no explanation as to why, in the absence of any new evidence or change in circumstances other than the suppression of Brown's confession, prosecutors elected to add three additional substantive charges to the indictment, such

that the only reasonable explanation for prosecutors' behavior is that they acted vindictively. I would therefore find that there is a reasonable likelihood that prosecutors acted vindictively in Brown's case.

Although I disagree with the majority's conclusion that the government's conduct in this case was not presumptively vindictive, I nevertheless concur in the result because Brown's unpreserved challenge fails on plain-error review. As the majority recognizes, despite Brown's uncounseled attempts to raise this issue below, Brown's counsel failed to raise prosecutorial vindictiveness at any stage of the proceedings. Maj. Op. at 5. We therefore may review Brown's challenge only for plain error, which requires that Brown "show (1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted).

Brown's challenge fails under this standard of review because the district court's error in failing to recognize that the government had engaged in presumptively vindictive conduct did not affect Brown's substantial rights. Brown was able to proceed to trial, which was postponed by several months after the superseding indictment was filed, allowing Brown to prepare a defense to the new charges. He was then able to present that defense at trial and to cross-examine the government's witnesses on the substantive charges. The jury considered the evidence carefully, as indicated by the fact that they acquitted Brown on one of the three substantive charges. And, ultimately, Brown's conviction on two of the three substantive charges did not end up increasing his sentencing exposure; had he been convicted of only conspiracy to distribute the same amount of methamphetamine, without the career-offender enhancement, Brown's base offense level would have been the same. The district court's error thus did not affect Brown's substantial rights, and

Brown's challenge fails to pass muster under plain-error review.  For these reasons, we must affirm as to Brown's prosecutorial vindictiveness challenge.

In sum, I join the majority opinion Parts I, IIB, IIC, and III, and I concur in the judgment regarding Part IIA.